FILED
United States Court of Appeals
Tenth Circuit

**June 16, 2009**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHRISTOPHER DWAYNE MCGEE,

Petitioner-Appellant,

v.

HASKELL HIGGINS, Warden,

Respondent-Appellee.

No. 07-6243

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:06-CV-00807-R)**

---

Submitted on the briefs:[*]

Fred Randolph Lynn, Tulsa, Oklahoma, for Petitioner-Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, Stephanie D. Jackson, Assistant Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Christopher Dwayne McGee, an Oklahoma state prisoner appearing with appointed counsel, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. After considering Mr. McGee's application for a certificate of appealability (COA) under 28 U.S.C. § 2253(c), we previously granted a COA on the following claims: "(1) McGee's ineffective assistance of [appellate] counsel claim for failure to raise the specific performance of his plea agreement, and (2) his claim that he did not voluntarily change his plea to not guilty."[1] Order of April 22, 2008 at 7. With regard to the latter claim, we note that the COA grant included a Sixth Amendment claim based on Mr. McGee's allegation that he was not represented by counsel at the withdrawal of plea hearing that was held in the state trial court on August 27, 2003.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm the district court's denial of habeas relief on each of these claims.

---

[1] To the extent that the pro se briefs and other filings that Mr. McGee submitted to this court before we appointed counsel to represent him in this appeal contain additional constitutional challenges relating to his plea agreement, the withdrawal of his plea, and/or his trial in April 2004, we deny a COA on any such claims because Mr. McGee has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

# I. Background.

In January 2001, Mr. McGee was charged in an Information filed in the District Court of Stephens County, State of Oklahoma, with two counts of distribution of a controlled dangerous substance (Counts I and III), and two counts of conspiracy to distribute a controlled dangerous substance (Counts II and IV), in violation of Okla. Stat. tit. 63, §§ 2-401(A) and 2-408. *See* R., Doc. 1, Ex. E at 1-2. The Information stated that the punishment for each count was "a fine of up to $20,000 or imprisonment for 2 years-Life, or both." *Id.*; *see also* Okla. Stat. tit. 63, §§ 2-401(B)(2) and 2-408. In February 2001, the government filed a Supplemental Information informing the trial court that Mr. McGee had three prior felony convictions under Oklahoma law. *See* Aplee. Second Supp. Br., Ex. 6.

Although not specifically indicated in the Supplemental Information, the government filed the Supplemental Information in order to enhance Mr. McGee's sentences under Okla. Stat. tit. 21, § 51.1. At the time the Supplemental Information was filed in February 2001, § 51.1(B) provided that "[e]very person who, having been twice convicted of felony offenses, commits a third, or thereafter, felony offenses . . ., shall be punished by imprisonment in the State Penitentiary for a term of not less than twenty (20) years." Okla. Stat. tit. 21, § 51.1(B) (eff. July 1, 1999). Due to the filing of the Supplemental Information,

"the minimum sentence [Mr. McGee] was facing for each [of the four counts charged against him] was twenty . . . years imprisonment, and the maximum sentence was life." Aplee. Second. Supp. Br. at 12. Effective July 1, 2001, however, the Oklahoma legislature amended § 51.1, and, for drug offenses such as those charged in the original Information filed against Mr. McGee, the amended version of the statute provided that "[e]very person who, having been twice convicted of felony offenses, commits a subsequent felony offense . . ., is punishable by imprisonment in the State Penitentiary for a term in the range of three times the minimum term for a first time offender to life imprisonment." Okla. Stat. tit. 21, § 51.1(C) (eff. July 1, 2001).

On November 21, 2001, Mr. McGee appeared in the trial court with counsel and entered a plea of guilty to all four counts charged in the original Information. *See* R., Doc. 8, Ex. 14. Pursuant to the terms of the plea agreement that Mr. McGee negotiated with the State, although there was no "agreed recommendation of the State as to penalty," *id.* at 2, the government agreed to drop the Supplemental Information and not seek to enhance Mr. McGee's sentences under Okla. Stat. tit. 21, § 51.1, *see* R., Doc. 8, Ex. 14 at 2-3. The trial judge, the Honorable George W. Lindley, accepted Mr. McGee's guilty plea and specifically confirmed that there would be "no enhancer" based on Mr. McGee's prior felony convictions. *Id.* at 3.

Judge Lindley subsequently sentenced Mr. McGee at a hearing held on January 7, 2002. After hearing arguments from counsel for Mr. McGee and the government, neither of whom said anything about the terms of the plea agreement, Judge Lindley made findings and imposed the following sentences:

> Well, the Pre-Sentence Investigation indicates a prior history of criminal activity. . . . Now, in this particular case the preparer points out that Mr. McGee was not armed and there is no indication that there was any violence associated with this activity. He does, however, in the past have a robbery by fear conviction.[2] However, the Pre-Sentence Investigation indicates that . . . Mr. McGee has not had contact with law enforcement between 1989 and 2000.
>
> I think the most disturbing matter in the report is the fact that the Defendant, while in denial of the problem that he has, tested positive for cocaine and marijuana at the time the Pre-Sentence Investigation was conducted. I don't think I have ever seen that in twenty-eight years on the bench.
>
> Mr. McGee, there are four charges against you, each of which would carry life in the penitentiary as a maximum penalty. Because of the past record and the circumstances surrounding the Pre-Sentence, the Court will sentence you to a period of thirty years on each of the counts against you, assess a two thousand five hundred dollar fine and costs. I will order that these sentences run concurrent, each with the other.

R., Doc. 8, Ex. 13 at 5-6.

Although Judge Lindley gave no explicit indication during the sentencing hearing that he was relying on Mr. McGee's prior felony convictions to enhance

---

[2] We note that the Supplemental Information does not list a prior conviction for robbery by fear, *see* Aplee. Second Supp. Br., Ex. 6, and this statement appears to be a mistake.

Mr. McGee's sentences under Okla. Stat. tit. 21, § 51.1, the Judgment and Sentence that Judge Lindley signed on the same day specifically states that "[t]he Court finds the defendant has **two or more** prior felony conviction(s) and this sentence has been enhanced in accordance with the provisions set forth in **21-51**."[3] *See* Aplee. Second Supp. Br., Ex. 7 at 1. But the Judgment and Sentence does not indicate which version of the enhancement statute Judge Lindley was applying. It is thus unclear whether he was applying the pre-July 1, 2001, version, which would have provided a sentencing range of twenty years to life for each of the four counts charged against Mr. McGee, or the post-July 1, 2001, version, which would have provided a sentencing range of six years to life for each count.

On January 10, 2002, Mr. McGee's trial counsel filed a motion to withdraw Mr. McGee's guilty plea. Judge Lindley subsequently held a hearing on the motion to withdraw, and Mr. McGee testified at the hearing that he was seeking to withdraw his guilty plea because he had not understood the sentencing ranges that applied to his case. *See* Aplee. Notice of Compliance with Order, Ex. 2 at 5, 6, 13. In a letter to the parties dated January 25, 2002, Judge Lindley summarily denied Mr. McGee's motion to withdraw his guilty plea. *Id.*, Ex. 3.

---

[3]     The statute cited by Judge Lindley, Okla. Stat. tit. 21, § 51, is an earlier version of Oklahoma's prior felony enhancement statute that was repealed in 1999. As a result, we will assume that Judge Lindley meant to cite Okla. Stat. tit. 21, § 51.1 (eff. July 1, 1999) in the Judgment and Sentence.

Subsequently, with the assistance of appointed appellate counsel,

Mr. McGee filed a petition for a writ of certiorari in the Oklahoma Court of

Criminal Appeals (OCCA), arguing that the trial court had breached his plea

agreement by enhancing his sentences based on the prior felony convictions set

forth in the Supplemental Information. In a summary opinion entered on July 1,

2003, the OCCA granted Mr. McGee's petition for certiorari, concluding as

follows:

> The crux of McGee's petition for certiorari is that he should be
> allowed to withdraw his guilty plea because he pled guilty after the
> State agreed to drop the "second page," and the trial court agreed that
> there would be "no enhancer" in the case. Yet the Record clearly
> reveals that McGee's ultimate conviction and sentence were based
> upon a finding that he had two or more prior felony convictions; and
> his sentence was enhanced accordingly.
>
> On May 29, 2003, the State filed a notice with this Court
> confessing error in this regard. The State admits that McGee's guilty
> plea was based upon an agreement that the second page would be
> dropped, but that his ultimate sentence was enhanced based upon his
> prior convictions. The State suggests that the proper remedy is to
> remand the case to the district court, where McGee should be
> allowed to withdraw his guilty plea. This Court agrees.

R., Doc. 8, Ex. 10 at 2. The OCCA therefore remanded the case to the trial court

with instructions that "McGee shall be allowed to **WITHDRAW HIS GUILTY**

**PLEA** to the four counts to which he pled in this case." *Id.* at 3.

On remand to the trial court, a withdrawal of plea hearing was held before

Judge Lindley on August 27, 2003. The parties dispute what transpired at the

hearing and who attended the hearing, and we note that, during the proceedings in

this case before the district court, the government represented that there is no transcript of the hearing. *See* R., Doc. 18 at 1-2. The record does show, however, that Judge Lindley entered a "Court Minute" in connection with the hearing, stating that "Defendant enters a plea of not guilty on this 27th day of August, 2003." *Id.*, Doc. 18, Ex. 1. In addition, as the government has pointed out, there is also a "'jacket minute' [from the trial court] dated August 27, 2003, noting that 'counsel agrees for court to allow w/draw of guilty pleas. Def. enters N.G., Bond set $25,000.00 report Oct. 14, 2003, as ordered.'" *Id.*, Doc. 18 at 2 (quoting Ex. 2 to Doc. 18). According to Mr. McGee, however, he was not represented by counsel at the hearing on August 27, 2003, and he further claims that he did not voluntarily withdraw his guilty plea and enter a plea of not guilty at the hearing. Instead, as alleged by Mr. McGee's current counsel, Judge Lindley simply "deemed his pleas of guilty changed to pleas of not guilty." Aplt. First Supp. Br. at 4.

In April of 2004, Mr. McGee was convicted by a jury of Count III (distribution of a controlled dangerous substance after two or more prior felony convictions) and Count IV (conspiracy to distribute a controlled dangerous substance after two or more prior felony convictions).[4] *See* Aplee. Second Supp.

---

[4] Counts I and II, which alleged distribution of and conspiracy to distribute a controlled dangerous substance on a separate date, were dismissed by the trial court during trial. *See McGee v. State*, 127 P.3d 1147, 1148 n.1 (Okla. Crim.

(continued...)

-8-

Br., Ex. 8 at 1-4. The jury fixed punishment at twenty years' imprisonment on each count. *Id.* at 3-4. The jury had been instructed that the sentencing range for both counts was six years to life. *See* Aplee. Notice of Compliance with Order, Ex. 4 at 1-2, 3. On May 14, 2004, in accordance with the jury's recommendation, the Honorable Joe H. Enos sentenced Mr. McGee to twenty years' imprisonment on each count, and he ordered the terms of imprisonment to run consecutively, for a total prison sentence of forty years. *See* Aplee. Second Supp. Br., Ex. 9 at 1.

Mr. McGee appealed his convictions on Counts III and IV to the OCCA, raising five propositions of error that are not relevant to this appeal. *See McGee v. State*, 127 P.3d 1147, 1148-49 (Okla. Crim. App. 2006). In a summary opinion published on January 5, 2006, the OCCA affirmed Mr. McGee's conviction on Count III, but reversed and remanded with instructions to dismiss the conviction on Count IV on grounds of insufficient evidence. *Id.* at 1149-50. As a result of the OCCA's action, Mr. McGee is serving one twenty-year prison sentence on one distribution count.

Mr. McGee subsequently filed a pro se application for post-conviction relief in the trial court, raising four claims: (1) ineffective assistance of appellate counsel; (2) improper imposition of a sentence; (3) prosecutorial misconduct; and (4) imposition of a fine not authorized by law. *See* R., Doc. 8, Ex. 7 at 3. The

---

[4](...continued)
App. 2006).

trial court denied Mr. McGee's application for post-conviction relief, and the OCCA affirmed. *Id.* at 3-4. As the OCCA noted in its order affirming the denial of post-conviction relief, "all of [Mr. McGee's post-conviction] claims revolved around his previous assertions of a violation of his prior plea agreement and ineffective assistance of counsel." *Id.* at 3. Mr. McGee did not assert any challenges to the voluntariness of the not guilty plea that was entered at the hearing that was held before Judge Lindley on August 27, 2003, or claim that he was not represented by counsel at that hearing. *Id.*, Exs. 4 and 6. Because Mr. McGee likewise did not assert the latter claims in his two prior appeals to the OCCA, he never asserted the claims in the state court proceedings.

In July 2006, Mr. McGee, proceeding pro se, filed his habeas petition under 28 U.S.C. § 2254 in the district court. In September 2007, the district court entered an order denying Mr. McGee's habeas petition. In its order, the court summarized Mr. McGee's habeas claims as follows:

> The essence of [Mr. McGee's habeas claims] is that he instructed his appellate counsel during his certiorari appeal not to seek withdrawal of his guilty plea but to seek a sentence modification based upon the plea agreement that had been made; that he never withdrew his guilty pleas and did not have counsel present with him when he allegedly withdrew his guilty pleas . . . . Basically [Mr. McGee] claims herein that his counsel for the certiorari appeal was constitutionally ineffective and deprived him of a right to specifically enforce his original plea agreement.

R., Doc. 19 at 1-2. The court then concluded that the claims were moot, reasoning as follows:

>Once [Mr. McGee] withdrew his guilty pleas, he was placed back in the position that he was prior to plea negotiations . . ., so there was no plea agreement that could be enforced. Having entered a plea of not guilty, proceeded to trial, been convicted, appealed the conviction and, had the conviction affirmed in part and reversed in part on appeal, claims pertaining to [Mr. McGee's] prior conviction and sentence entered on January 7, 2002 are moot, including [Mr. McGee's] claim that his counsel on his certiorari appeal was constitutionally ineffective.

*Id.* at 3. Mr. McGee is now appealing the district court's denial of his habeas petition.

## II. Analysis.

As set forth below, although we affirm the district court's denial of Mr. McGee's habeas petition, we do so for different reasons than those relied on by the district court

### A. Standard of Review.

In its order affirming the denial of Mr. McGee's application for post-conviction relief, the OCCA denied Mr. McGee's claim that he received ineffective assistance from his appellate counsel during his certiorari appeal on the merits. *See* R., Doc. 8, Ex. 7 at 4. Thus, "ordinarily our review would be limited to determining whether [Mr. McGee] can show that the state court's disposition is 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting

28 U.S.C. § 2254(d)(1)). "However, this deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." *Id.* We conclude that the OCCA applied the wrong standard here.

As we recognized in *Cargle*, "[t]he proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in *Strickland v. Washington*, 466 U.S. 668 . . . (1984)." 317 F.3d at 1202. "Thus, the petitioner must show both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding . . . would have been different." *Id.*

In its order affirming the denial of Mr. McGee's application for post-conviction relief, the OCCA correctly paraphrased *Strickland's* two-prong inquiry when it addressed Mr. McGee's claim that he received ineffective assistance from his appellate counsel during his certiorari appeal. *See* R., Doc. 8, Ex. 7 at 3-4 (citing *Strickland*, 466 U.S. at 687). But the OCCA also set forth a different standard for analyzing the issue of whether appellate counsel's performance was deficient, stating that "[t]he fact appellate counsel fails to recognize or raise a claim, *regardless of merit*, is not and cannot alone be sufficient to establish ineffective assistance . . . ." *Id.* at 4 (emphasis added).

-12-

In *Cargle*, we explicitly disavowed this standard as inconsistent with *Strickland.*

As we explained:

> [The OCCA's] truncation of the *Strickland* test [has]
> enable[d] the OCCA to reject appellate ineffectiveness allegations
> *without any assessment of the merits of underlying predicate claims*,
> so that the OCCA has been able to declare that a "failure to raise
> even a meritorious claim does not, in itself, constitute deficient
> performance." *Slaughter v. State*, 969 P.2d 990, 996
> (Okla. Crim. App. 1998) . . . .
>
> . . . .
>
> It is clearly wrong, as a matter of federal law, to require as a
> necessary condition for relief under *Strickland*, something beyond the
> obvious merit of the omitted claim.  The very focus of a *Strickland*
> inquiry regarding performance of appellate counsel is upon the merits
> of omitted issues, and no test that ignores the merits of the omitted
> claim in conducting its ineffective assistance of appellate counsel
> analysis comports with federal law.  A sufficiently meritorious
> omitted claim certainly can, by itself (or in relation to other issues
> that counsel did pursue), establish constitutionally deficient
> performance by appellate counsel.

*Cargle*, 317 F.3d at 1204-05.

Although the OCCA's order denying post-conviction relief does not specifically state that the OCCA relied on the repudiated "regardless of merit" standard to support its finding that Mr. McGee "has not established appellate counsel's performance was deficient," R., Doc. 8, Ex. 7 at 4, its reference to the standard in the immediately preceding sentence leads us to conclude that the OCCA's analysis necessarily "deviated from the controlling federal standard . . . [and] is [therefore] not entitled to deference," *Cargle*, 317 F.3d

at 1205.  Accordingly, we will not defer to the OCCA's rejection of Mr. McGee's claim that he received ineffective assistance from his appellate counsel during his certiorari appeal, and we will instead review the claim de novo.

## B.  Mr. McGee's Appellate Ineffectiveness Claim.

As the Supreme Court explained in *Strickland*, it is not necessary "to address both components of the [ineffective assistance of counsel] inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697.

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.*  Because it is easier to dispose of Mr. McGee's appellate ineffectiveness claim on the ground of lack of sufficient prejudice, we will confine our analysis to the prejudice prong of the *Strickland* inquiry.

As set forth above, in order to establish the requisite prejudice as a result of being deprived of his original plea agreement, Mr. McGee must show that, but for his appellate counsel's unprofessional errors, there is a reasonable probability that the result of his certiorari appeal to the OCCA and the resulting remand to the trial court would have been different.  *See Cargle*, 317 F.3d at 1202.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Thus, Mr. McGee must show a

-14-

reasonable probability that the trial court, i.e., Judge Lindley, would have sentenced him to a sentence of less than twenty years (the sentence ultimately imposed after Mr. McGee's trial and direct appeal to the OCCA) if his appellate counsel had been successful in having the original plea agreement specifically enforced and Mr. McGee resentenced on remand in accordance with that agreement. This requires a specific showing that there is a reasonable probability that Judge Lindley would have imposed a sentence of less than twenty years if he had been presented with the opportunity to resentence Mr. McGee on the four drug counts with no prior felony enhancers and thus a sentencing range of two years to life on each count.

As set forth above, the prejudice inquiry is complicated by the intervening amendment to Oklahoma's prior felony enhancement statute and by the fact that it is unclear which version of the enhancement statute Judge Lindley was applying when he sentenced Mr. McGee to four thirty-year concurrent sentences in January 2002. Most importantly, it is unclear whether Judge Lindley was applying the pre-July 1, 2001, version of the statute, which would have provided a sentencing range of twenty years to life for Mr. McGee, or the post-July 1, 2001, version of the statute, which would have provided a sentencing range of six years to life. Consequently, we will perform a prejudice analysis under both versions of the statute.

We conclude that Mr. McGee has failed to show a reasonable probability that Judge Lindley would have sentenced him to a term of imprisonment of less than twenty years if the plea agreement had been specifically enforced. First, assuming that Judge Lindley was applying the post-July 2001 version of the enhancement statute when he sentenced Mr. McGee to four thirty-year concurrent sentences, we do not believe that Judge Lindley would have imposed shorter sentences if the minimum sentence on each of the four counts was reduced from six years to two years. In fact, Judge Lindley's decision to impose enhanced sentences that were twenty-four years above the six-year minimum belies any such possibility. Further, we reject Mr. McGee's argument that he can show prejudice as a result of being deprived of his plea agreement because: (1) Judge Lindley in effect sentenced him to seven and one half years on each of the four enhanced counts when he imposed four thirty-year concurrent sentences; and (2) Judge Lindley would have reduced each of the sentences by two thirds if he had been presented with the opportunity to resentence Mr. McGee with a two-year minimum sentence instead of a six-year minimum sentence. *See* Aplt. Second Supp. Br. at 13-14. Simply put, Judge Lindley sentenced Mr. McGee to four indivisible thirty-year sentences, and the fact that he ran the sentences concurrently does not assist Mr. McGee in showing the requisite prejudice under *Strickland*. Nor is there any indication in the trial court record that Judge Lindley

-16-

based his sentences on any sort of ratio or correlation between the unenhanced minimum sentence and the enhanced minimum sentence.

Second, assuming that Judge Lindley was applying the pre-July 2001 version of the enhancement statute when he sentenced Mr. McGee to four thirty-year concurrent sentences, we do not believe that having the minimum sentence reduced from twenty years to two years would have made any difference in the sentences that Judge Lindley imposed.  Although this is a closer question given the larger difference between the unenhanced and enhanced minimum sentences, we nonetheless conclude that a finding of no prejudice is required by our published decision in *Shaw v. Johnson*, 786 F.2d 993 (10th Cir. 1986), and is further supported by our unpublished decision in *McCormack v. Jones*, 248 F. App'x 29 (10th Cir. 2007).

In *Shaw*, an Oklahoma state prisoner brought a habeas action under 28 U.S.C. § 2254, arguing that "the Oklahoma court of criminal appeals unconstitutionally denied [him] of his right to have a jury resentence him when that court found that the jury had been erroneously instructed as to the minimum number of years [he] could receive [under an earlier version of Oklahoma's prior felony enhancement statute]."  *Shaw*, 786 P.2d at 995; *see also id.* at 997 (citing

Okla. Stat. tit. 21, § 51(A) (1981)).  In a thorough and extensive discussion that is

directly on point for purposes of this appeal, we rejected the prisoner's argument.

After noting that Shaw was found guilty and sentenced to life imprisonment under

an enhancement statute that both defense and government counsel believed

required a minimum sentence of twenty years, we concluded as follows:

> It later developed that the trial court, as well as all of counsel,
> were laboring under a misapprehension as to the minimum sentence
> which could be imposed if the jury found that Shaw had suffered one
> prior felony conviction.  Instead of being a twenty-year minimum, as
> the jury was instructed, the actual minimum then permitted by statute
> was ten years. . . .  Shaw, in this federal habeas proceeding, asserts
> that this error in the sentencing jury instruction is constitutional
> error.  He argues that under the circumstances, the Oklahoma Court
> of Criminal Appeals should have remanded the case to the trial court
> for a new resentencing trial where the jury would be properly
> instructed as to the correct minimum sentence which could be
> imposed, i.e., ten years and not twenty.
>
> . . . .
>
> In [this] case, it is unlikely that the sentencing error had any effect
> on Shaw's sentence.  The jury was instructed that the range of
> punishment which could be imposed was from twenty years to life.
> The jury rejected the argument of defense counsel that they give
> Shaw a twenty-year sentence, and, instead, imposed the maximum
> sentence allowable, i.e., life.  It is pure speculation that the jury
> would have imposed something less than life imprisonment had it
> been properly instructed that the minimum possible sentence was ten
> years, and not twenty. . . .  *See Hill v. Estelle*, 653 F.2d 202, 205
> (5th Cir. [1981]) . . . (error in minimum possible sentence did not
> [require resentencing] when actual sentence given was large enough
> to show that error did not prejudice defendant).

*Shaw*, 786 F.2d at 996-98; *see also Hill*, 653 F.2d at 205 (noting that "[i]t would

be an entirely different case if the judge had assessed [Hill's] punishment at or

near the [incorrect] minimum [of] five years . . ., because then Hill might have received a sentence at or near the [correct] minimum [of] two years [if he had been resentenced under the correct sentencing range], and thus his argument to prejudice would have been substantial").

Although *Shaw* involved a jury's sentencing decision, while this case involves a trial judge's sentencing decision on a guilty plea, *Shaw* recognized a general principle that applies with full force and effect here, i.e., a defendant is not prejudiced by the use of an incorrect minimum sentence when the sentence imposed is within the correct sentencing range and is substantially in excess of the incorrect minimum sentence. *Accord McCormack*, 248 F. App'x at 34 (applying earlier version of Oklahoma's prior felony enhancement statute and holding that a prisoner challenging his enhanced sentence could not show prejudice under *Strickland* where "the jury imposed a sentence . . . far above the [mistakenly] instructed minimum of twenty years, [and] it [was thus] unlikely that a [corrected] minimum of ten years would have led them to reduce the eighty years imposed").

In this case, of course, Judge Lindley did not impose the maximum sentence of life imprisonment like the jury in *Shaw*. Nonetheless, assuming that Judge Lindley was applying the pre-July 2001 version of the enhancement statute, the thirty-year sentences that he imposed exceeded the incorrect minimum

sentence (i.e., twenty years) by ten years, a substantial upward departure in our opinion.[5] As a result, as in *Shaw*, it is pure speculation to say that Judge Lindley would have imposed a sentence of less than twenty years if he had been applying a two years to life sentencing range instead of a twenty years to life sentencing range.

In sum, Mr. McGee has failed to show a reasonable probability that he would have received a sentence of less than twenty years if Judge Lindley had resentenced him without the prior felony enhancers. Accordingly, Mr. McGee has failed to satisfy the prejudice prong of *Strickland*, and we affirm the denial of habeas relief on his claim of ineffective assistance of appellate counsel.

### C. Mr. McGee's Challenges to the Withdrawal of Plea Hearing.

As noted above, Mr. McGee did not raise his challenges to the withdrawal of plea hearing that was held in the trial court on August 27, 2003, in any of the state court proceedings. As a result, no record was developed on the questions of whether Mr. McGee's not guilty plea was voluntary and whether he was represented by counsel at the hearing. We therefore cannot decide these issues based on the existing state court record. Indeed, Mr. McGee's current counsel conceded this point during the supplemental briefing in this appeal, as

---

[5]     Moreover, if Judge Lindley was applying the post-July 2001 version of the enhancement statute, then he imposed a sentence that exceeded the incorrect minimum sentence by twenty-four years, and *Shaw* applies with even more force.

counsel candidly acknowledged that a remand for further development of the state court record is required to resolve these issues.[6] *See* Aplt. First Supp. Br. at 5-6 ("The record does not adequately reflect that Mr. McGee was represented by counsel at the hearing in question. At the very least, resolution of this issue requires consideration of material not available in the record, which suggests the necessity of reversal and remand."); *id.* at 24 ("The record is insufficient to demonstrate that the 'withdrawals' attributed to Mr. McGee of his guilty pleas [were] counseled, and thus 'voluntary.' Definitive resolution of that issue would require reversal and remand as it would require additional record material . . . .").

As we understand defense counsel's statements, counsel is in effect asking this court to remand this matter to the district court for an evidentiary hearing on the voluntariness and presence of counsel issues, so that a sufficient record can be developed on those issues and the merits of the issues can be decided. This we cannot do, however, because 28 U.S.C. § 2254(e)(2) bars such a course of action at this stage of these proceedings.

---

[6]  In the pro se brief that he submitted to this court before his current counsel was appointed to represent him, Mr. McGee likewise acknowledged the deficiencies in the state court record with regard to the voluntariness and presence of counsel issues. *See* Aplt. Pro Se Br. at 19 (filed January 10, 2008). In fact, Mr. McGee specifically argued that the district court should have held an evidentiary hearing in order to develop an adequate record. *Id.* Moreover, foreshadowing his counsel's present stance, Mr. McGee requested that this court now grant him an evidentiary hearing. *Id.* at 23.

Section 2254(e)(2) provides that if a habeas petitioner "has failed to develop the factual basis of a claim in the State court proceedings," then a federal district court shall not hold an evidentiary hearing on the claim unless the claim is based on: "(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence."  28 U.S.C. § 2254(e)(2)(A)(i) and (ii).  A prisoner has "failed to develop" a claim in state court proceedings if "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  "Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court."  *Id.* at 435.

Consistent with these principles, we easily conclude that Mr. McGee failed to exercise the required diligence to develop a record in the state court proceedings on the voluntariness and presence of counsel issues.  To begin with, neither Mr. McGee's appellate counsel in his certiorari and direct appeals to the OCCA nor Mr. McGee himself in his pro se post-conviction proceeding ever raised any sort of challenge to the withdrawal of plea hearing that was held in the trial court on August 27, 2003.

Further, there is no indication in the record that the trial court or the OCCA did anything to prevent Mr. McGee from developing a record on the voluntariness

and presence of counsel claims. It is also clear that Mr. McGee cannot satisfy either of the stringent exceptions in § 2254(e)(2) to excuse his lack of diligence, as he is not relying on any new rule of constitutional law, and he has no basis for asserting that he was unable to discover the factual predicates for the voluntariness and presence of counsel claims.[7] To the contrary, since he himself attended the withdrawal of plea hearing, Mr. McGee knew precisely what transpired at the hearing and was thus immediately aware of the factual predicates for his claims, and there is simply no excuse for his failure to assert the voluntariness and presence of counsel claims in the state court proceedings. Consequently, § 2254(e)(2) prohibits us from remanding the claims to the district court for an evidentiary hearing, and, given the deficient record before us, we must deny relief on the claims.

The judgment of the district court is AFFIRMED.

---

[7]     In fact, Mr. McGee informed his direct appeal counsel of the alleged lack of defense counsel at the hearing that was held before the trial court on August 27, 2003, in a letter that he apparently sent to counsel in January 2005. *See* R., Doc. 16, Ex. 1 at 2. Counsel did not assert a claim based on this issue in Mr. McGee's direct appeal, however, *id.*, Doc. 8, Ex. 1, and Mr. McGee also failed to assert such a claim as part of the ineffective assistance of appellate counsel claims that he pursued in his pro se post-conviction proceeding, *id.*, Exs. 4 and 6.