**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GREGORY JOHN BUSHYHEAD,

      Petitioner - Appellant,

v.

MICHAEL WADE, Warden,

      Respondent - Appellee.

No. 14-5015
(D.C. No. 4:10-CV-00797-CVE-FHM)
(N.D. Oklahoma)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.

Applicant Gregory Bushyhead was driving a truck in Tulsa, Oklahoma, when he was involved in an intersection collision that killed the passenger in the other vehicle. He was convicted of driving-under-the-influence (DUI) manslaughter and leaving the scene of an accident. His direct appeal to the Oklahoma Court of Criminal Appeals (OCCA) was unsuccessful, as was his later appeal to the OCCA of the trial court's denial of his motion for postconviction relief. On December 14, 2010, he filed an application for relief under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Oklahoma. The district court denied relief and Applicant now seeks from us a

certificate of appealability (COA) to raise a number of challenges to his conviction.[1] *See*

28 U.S.C. §2253(c)(1)(A) (requiring a COA to appeal denial of §2254 application).  We

deny a COA and dismiss the appeal.

## I.  DISCUSSION

### A.  Standard of Review

A COA will issue "only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires "a

demonstration that . . . includes showing that reasonable jurists could debate whether (or,

for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were adequate to deserve encouragement to proceed further."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  In other

words, the applicant must show that the district court's resolution of the constitutional

claim was either "debatable or wrong."  *Id.*

If the application was denied on procedural grounds, the applicant faces a double

hurdle.  Not only must the applicant make a substantial showing of the denial of a

constitutional right, but he must also show "that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling."  *Id.*  "Where a plain

procedural bar is present and the district court is correct to invoke it to dispose of the

case, a reasonable jurist could not conclude either that the district court erred in

---

[1] Applicant raised two issues in district court that he does not pursue here:  that he was convicted under a different statute from what he was charged under and cumulative error.

2

dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

One procedural ground for denying a § 2254 application is that the claim was procedurally barred in state court. "Claims that are defaulted in state court on adequate and independent state procedural grounds will not be considered by a habeas court, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Relief is provided under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted). Thus, a federal court may not issue a

3

habeas writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See id.* Rather, that application must have been unreasonable. Therefore, for those of Defendant's claims that the OCCA adjudicated on the merits, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

**B.      Grounds Raised on Direct Appeal with the OCCA**

Two of Applicant's claims were presented to and rejected by the OCCA on direct appeal.

We first address Applicant's argument that the manslaughter instruction incorrectly set forth the elements of driving while impaired (DWI), omitting the requirement that he was driving "with impaired ability." Aplt. Pet. at 10 (internal quotation marks omitted). The OCCA rejected the claim, noting that a separate instruction properly laid out the elements of DWI. No reasonable jurist could debate the district court's determination that the OCCA's decision was not contrary to or an unreasonable application of Supreme Court precedent. *See United States v. Park*, 421 U.S. 658, 674 (1975) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." (internal quotation marks omitted)).

Applicant's other argument that was raised on direct appeal is that he was denied due process because the trial court refused to give his theory-of-defense instructions on

4

proximate cause. He argues that it was contested at trial whether he or the other driver was responsible for the accident and that the jury should have been informed that even if he was intoxicated, he still had to have caused the accident in order to be guilty of manslaughter. The OCCA stated that a proximate-cause instruction was not supported by the law or evidence. An instruction at trial "required the jury to find that the death of a human occurred as the 'direct result of an act or event which happened in the commission of a misdemeanor.'" *Bushyhead v. Wade*, No. 10-CV-0797-CVE-FHM, 2014 WL 585355, at \*7 (N. D. Okla. Feb. 13 2014). And another instruction stated that "'no person may be convicted of manslaughter in the first degree unless both the fact of the death of the person allegedly killed and the fact that his death was caused by the conduct of another person are established as independent facts and beyond a reasonable doubt.'" *Id.* (brackets and internal quotation marks omitted). The district court concluded that the instructions as a whole informed the jury that Applicant had to be the direct cause of the victim's death. No reasonable jurist could debate the district court's conclusion that the refusal to give Applicant's requested proximate-cause instructions was not a deprivation of his due-process rights.

## C.     The Remaining Claims

The other grounds presented to this court were deemed waived by the OCCA when it considered Applicant's postconviction motion because they could have been raised on direct appeal and were not. Applicant's sole challenge to the OCCA's waiver ruling is that his counsel on direct appeal was ineffective in not raising the claims.

Although the OCCA ruled in Applicant's postconviction appeal that his counsel on direct appeal was not ineffective, the district court did not defer to that ruling because, in its view, the OCCA had applied an incorrect test for assessing ineffectiveness. But addressing the issue de novo, it ruled that there was no ineffectiveness, upholding the procedural bar. We agree with the district court's analysis of ineffectiveness, so we need not consider whether the OCCA applied the wrong test. We now turn to the merits of the ineffectiveness claim.

To establish ineffective assistance of appellate counsel, the applicant "must show both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *McGee v. Higgins*, 568 F.3d 832, 838 (10th Cir. 2009) (ellipses and internal quotation marks omitted). Our analysis of whether appellate counsel's omission of an issue on appeal constituted ineffective assistance of counsel ordinarily begins with an examination of the merits of the issue. *See Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Id.* (internal quotation marks omitted). "On the other hand, if the omitted issue has merit but is not so compelling, we must examine the issue in relation to the rest of the appeal." *Id.* "[O]f course, if the issue is meritless, its omission will not constitute deficient

6

performance." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2008) (footnote omitted). And "[h]abeas relief is warranted only if the petitioner establishes a reasonable probability of a favorable result had his appellate counsel raised the omitted issue." *Id.*

The district court determined that Applicant's waived claims lack merit. We summarize the district court's responses to each claim.

Applicant raises several challenges to the testimony by the state's accident reconstructionist. The district court ruled (1) that the testimony satisfied the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), did not invade the province of the jury, and did not incorrectly instruct the jury on the law; and (2) that Applicant was not denied materials necessary to cross-examine the expert.

Applicant argues that the jury was inflamed against him when one of the jurors told the rest of the jury that he had been involved in a traffic accident with a drunk driver. The accident occurred on the evening before the last day of trial. The district court ruled the claim meritless, noting that the juror involved in the accident was excused and that the remaining jurors said that their knowledge of the accident would not impact their ability to reach a fair verdict.

Applicant argues that four of his statements at the scene of the accident and while being booked were admitted into evidence in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court ruled that three statements were properly admitted: one statement was made during an exchange initiated by Applicant and two were responses to questions meant to facilitate the completion of paperwork, not to elicit incriminating

responses. The court did rule that the fourth statement—"Yeah, I had a couple of drinks," *Bushyhead*, 2014 WL 585355, at *19 (internal quotation marks omitted)—was elicited in violation of *Miranda.* But it held that the error was harmless in light of Applicant's trial testimony, his blood-alcohol level of 0.24, and the testimony of witnesses at the scene of the accident and in the hospital.

Applicant argues that the test results on his blood-alcohol sample should not have been admitted because they were unreliable due to flaws in testing and in the chain of custody. The district court ruled that questions about the chain of custody and handling of the sample went to the weight of the evidence, not its admissibility.

Applicant argues that the test results also should be excluded because he was not told about the results until three months after the test had been completed, when time for the sample to be independently tested had expired. The district court ruled that there was no impediment to his having arranged for a timely independent test: He did not have to await the results of the state's blood test, he knew that blood had been drawn the night of the accident, and he had hired trial counsel within 46 days of the accident.

Finally, Applicant argues that he was denied due process because the state failed to provide him recordings of police interviews with himself and the other driver on the night of the accident and the blood-alcohol test of the other driver. But the district court found that Applicant received a copy of the police-interview recordings on the second day of trial, that there is no evidence that the other driver's blood was tested, and that there is no evidence of police bad faith in the failure to conduct a blood-alcohol test on

8

the other driver, *see Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

Perhaps another attorney would have raised one or more of these challenges on direct appeal. But the challenges are, at best, quite weak. No reasonable jurist would debate the district court's conclusion that failure to present these arguments on direct appeal was not ineffective assistance of counsel.

## II.      CONCLUSION

We DENY the application for a COA and DISMISS the appeal.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

9